(119 App. Div. 628)

CROWNHART v. TRACY et al. (two cases).

TRACY et al. v. ANDREWS et al.

(Supreme Court, Appellate Division, Fourth Department.   May 1, 1907.)

CONTRACTS—MODIFICATION AND MERGER.

    C., being the vendee in a contract for the sale of a parcel of land known as the "hotel property," and also of a parcel of land known as the "D. Farm," together with the personal property in the hotel and on the farm, assigned the contract to a construction company, in consideration that it would convey to C. the interest which it would acquire in the D. farm on completion of the contract; and it was provided that, if the assignee should be unable to meet the payments as specified in the assigned contract, it should reassign to C. the same interest which was assigned by him to it.  Thereafter C. and the assignee entered into a new contract, whereby C. leased to it certain property and surrendered to it all claim to the D. farm, provided that, in case of default by it in respect to this new contract, it would acquire and convey to C. the interest in the D. farm, to a conveyance of which C., but for this new agreement, would have been entitled.  Held, that under the last contract C. had no further interest in the property covered by the contract of sale assigned by him, except his interest in the D. farm, contingent upon the failure of the assignee to perform its part of the last·contract, and, it having defaulted as to that contract, he was entitled to receive from it a conveyance of the D. farm only, and was not entitled to receive a reassignment of the contract of sale, though the assignee also violated the provisions of such contract.

Appeal from Judgment on Report of Referee.

Three actions—two by Fred B. Crownhart against William G. Tracy and another, as receivers of the Bay Road Construction Company, and one by William G. Tracy and another, as receivers of the Bay Road Construction Company, against William S. Andrews and others, executors, etc., and Fred B. Crownhart.  By agreement the three actions were tried together before the referee.   From the judgment entered upon the report of the referee, William G. Tracy and another, as receivers, appeal.   Reversed, and a new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

W. A. MacKenzie, for appellants.
Oliver D. Burden, for respondents.

ROBSON, J.   By agreement the three actions involved in the judgment appealed from were tried together before the referee, to whom they had been duly referred.   But one report was made by the referee

in disposing of all the actions, by which, however, he directed specifically the judgment to be entered in the consolidated actions Nos. 1 and 2, and also the judgment to be entered in action No. 3.   Only one judgment was entered on this report, which purports to adjudicate the rights of the various parties to the separate actions, in which, it will be observed, the parties are not the same, and the relief demanded by the parties and accorded by the judgment differs materially in each action.   While we think the proper practice in such cases is to enter separate judgments, yet, as no objection to the judgment on that ground is urged by appellants, and as the judgment must be reversed on other grounds directly affecting the merits of the actions, we assume, in determining this appeal, that the judgment is regular in form and warranted by the findings of the referee.

The controversies which it is sought by these actions to adjust arise because of material difference of opinion as to the rights and interests which the parties to the action claim under several agreements relating to the conveyance of certain lands on or near the shore of Oneida Lake.   The first agreement was made in September, 1904, by which the executors of and beneficiaries under the will of Arthur Jenkins, deceased, in consideration of the sum of $25,175, agreed to sell to Fred B. Crownhart, who is the plaintiff in actions 1 and 2 and one of the defendants in action 3, a parcel of land which may be briefly referred to as the "Sagamore Inn hotel property," and also all of the interest which Jenkins had acquired in about 25 acres of land, known and hereinafter designated as the "Dunham farm."   They also agreed to convey to Crownhart personal property, consisting of furniture, horses, wagons, etc., which was in the hotel and on the farm.   This real estate was to be taken by the purchaser subject to a mortgage of $15,000, which was to be considered as a part of the purchase price, and the balance thereof was to be paid in installments at various times;  the last installment, being $6,000, to be paid September 1, 1905.   Crownhart also agreed to pay interest on the mortgage from July 1, 1904, and all taxes assessed on the premises after January 1, 1905, and to reinsure the buildings on said premises as fast as the various policies thereon should expire, and keep policies in force for the sum for which they were then insured.   The various installments of purchase price were not to bear interest, if paid as they matured.   Crownhart was to have possession of the premises immediately on delivery of the agreement;  and when the sums of money should be paid, as provided for in the contract, the vendors agreed to convey the property to the purchaser.   The agreement further provided that on Crownhart's default in making prompt payments of the moneys, the payment of which was provided for by the contract, he would surrender the premises, and in that case whatever payments had been made upon the agreement should remain the property of the vendors as and for their damages by reason of the purchaser's failure to perform.   This contract will, for convenience of reference, be hereinafter designated as the "Jenkins contract."

At this time a construction company, known first as the "Cleveland," and after a change of name as the "Bay Road," Construction Company, was interested in building an electric railway line, and the

shore of this lake at or near the property in question was one of its
objective points. On November 30, 1904, Crownhart by written as-
signment transferred to the construction company the Jenkins con-
tract, subject to the covenants, conditions, and payments therein men-
tioned. As the material consideration for the assignment, the con-
struction company agreed to convey on September 1, 1905, to Crown-
hart, either directly or through Jenkins' executors and beneficiaries,
the interest which it should acquire in the Dunham farm on completion
of the Jenkins contract. A further stipulation of the contract of as-
signment provided that if at any time the company should be or become
unable to meet any of the payments, to be made as specified in the as-
signed contract, or any extension of the same, the company would
give Crownhart 30 days' notice in writing thereof, and at the same time
reassign to him the same interests in all the property, which were in-
tended to be assigned by him to the company, which reassignment
should be in full settlement of all claims he might have against the
company. The company was also further thereby empowered, upon
performance of the Jenkins contract, on its part to demand and re-
ceive conveyance of the property by deed with like effect as Crown-
hart could have done if the assignment had not been made. Following
this assignment the construction company, complying with the terms
of the contract, made payments to apply on the purchase price ag-
gregating $3,175; and no claim is urged that it made default in any
respect prior to the date when the last installment became due. Crown-
hart, about the time the Jenkins contract became of force, went into
possesion of the Dunham farm, and has continuously held possession
thereof since that time. The construction company took possession of
the Sagamore Inn, and expended large sums in remodeling and re-
arranging it. The $6,000 balance of purchase price, which became due
September 1, 1905, was not paid on that date. Ten days later, how-
ever, one Kimball, who in many particulars actually was the con-
struction company, and who was then acting, as he had acted before,
and did afterwards act, in behalf of the company, entered into an
agreement with the two beneficiaries of the Jenkins estate by which
the time of payment of the balance of the purchase price was en-
larged. As a consideration for according this extension of time it
was agreed that interest should be paid upon the deferred payments;
and, further verbal extensions of time having been given, it was
agreed that counsel fees, amounting to $100 incurred by the Jenkins
beneficiaries by reason of the company's delay in paying, should also
be paid by the company as further consideration for the extension of
the time of payment.

At the time this last agreement was made Crownhart was, under the
provisions of the contract by which he transferred to the construction
company the Jenkins contract, entitled to a conveyance of the Dunham
property. The construction company, it was manifest, could not then
convey to him, because it had not then received, nor was it then en-
titled to demand, a conveyance of the property. At this juncture we
find Crownhart and the construction company entering into a further
agreement, as a part of which it was manifestly intended that all the
unsettled matters in relation to the property covered by the Jenkins

contract should be readjusted and settled on the lines of the new agreement. Crownhart had title to premises adjoining the Dunham farm, which were known as the "Crownhart Hotel property." Ten days after the agreement made by Kimball for the construction company, to which we have just referred, the construction company leased of Crownhart his own hotel property, which adjoined the Dunham farm, and Crownhart thereby in terms released to the company all claim to the Dunham farm, retaining, however, all personal property thereon. The term of the lease was 999 years, and the annual rental $2,000. The lease contained a further agreement that, in case of default by the construction company in any of its agreements, it would acquire and convey to Crownhart the interest in the Dunham farm, to the conveyance of which Crownhart, but for this agreement, would have been entitled, or, in case of inability to acquire and convey that interest, would pay to him $5,000 as liquidated damages. For the purpose of securing the performance of the clause of this agreement last above set forth, the construction company agreed to give Crownhart a bond in the sum of $5,000, with sureties, conditioned for the performance of that part of the agreement. It was also agreed that $2,000 should be paid by the company to Crownhart on the delivery of the agreement, which should be the rent of the property for the first year. The company paid only $1,300 to apply on the $2,000 payment, and never has given the bond; and it does not appear that any demand has been made for such bond. There was also a provision in the lease that, if 90 days' default should be made in the payment of the reserved rent, or any part thereof, or if any other covenant in the lease should be violated by the company, Crownhart had the right, at his option, to terminate the lease by giving 30 days' notice of his election so to do.

We have set out at length the various material provisions of these agreements, in order that the position of Crownhart, so far as any interest he might have in the property, which was the subject-matter of sale in the original contract between Crownhart and the Jenkins people, might clearly appear. By this last agreement with the construction company he retained certain personal property, referred to in the Jenkins contract, which he already had in his possession. Beyond this, his only interest in, or possible right to, any of the property affected by the Jenkins contract, was contingent upon the failure of the construction company to perform its part in the last agreement with him. If the construction company did not perform, it agreed to acquire and convey to Crownhart the designated interest in the Dunham farm, or, if unable to acquire and convey it, to pay him $5,000 as liquidated damages. No interest in the Jenkins contract and no interest in the property mentioned therein, other than as we have just stated, then remained to Crownhart. He was not even under any obligation to the Jenkins people under his original contract with them; for the time of performance of this contract had been for a valuable consideration, passing from the construction company, the assignee of the contract, to the Jenkins people, extended, and this fact alone, under the well-recognized legal principles which determine the rights and obligations of a surety, which at that time was Crownhart's position in reference to the contract, was an effectual release of any

104 N.Y.S.—14

further liability on his part to the Jenkins people. Crownhart's rights being thus clearly defined, the subsequent proceedings are interesting, because they show that, while he at first recognized the legal and equitable limitations of his rights, he later enlarged his view, and sought to compel a reassignment to him by the authorized representatives of the construction company of the original contract and all rights existing thereunder.

At the end of the various extensions of the time of payment of the balance of the purchase price specified in the Jenkins contract, which were, as we have already said, agreed upon between the Jenkins people and the construction company, the $6,000, which completed the balance unpaid of principal of the contract price, was paid by the company. The small balance of interest and counsel fee, to which we have also referred, was not then paid, apparently with the consent of the parties interested; it being also at that time spoken of, as a further reason for delay in completing the transaction, that it had not yet been determined by the purchaser to whom the conveyance should be made. After this payment of the $6,000 had been made, and in the latter part of December, 1905, Crownhart appears to have become anxious as to the financial future of the construction company. Though he had leased his hotel premises to the company, possession thereof was still retained by him. He had also received $1,300 to apply on the first payment reserved in the lease. Seven hundred dollars still remained unpaid. His agent then presented to the construction company a deed of the Dunham farm and asked to have it executed and delivered, that the whole matter might be then and there ended. This request was declined, and Kimball explained the refusal by the statement that the company matters could not be complicated by giving the deed at that time. It will be remembered that no proceedings had been taken, and no notice of any kind given, at that time, to terminate the contract by which the rights of the parties had been adjusted in September of that year.

It is not necessary, in disposing of this case, to determine whether Crownhart gave the 30 days' notice required to terminate his lease with the construction company prior to beginning action against it, though the referee has found that the notice was given December 22, 1905, and action No. 1 appears to have been begun by Crownhart January 19, 1906, less than 30 days after the date found by the referee as that on which notice was given. This action, referred to as "action No. 1," was brought against the construction company to compel conveyance to plaintiff of the Dunham farm; and the complaint sets out the Jenkins agreement and the two agreements between Crownhart and the construction company, to which we have already referred, and also alleges failure of the construction company to comply with the terms of the lease, or last contract, as the basis of his action. About February 6, 1906, and before defendant's time to answer expired, the construction company passed into the hands of receivers, who have since been duly substituted as defendants in that action. February 12, 1906, Crownhart, having obtained permission of the court, began action No. 2 against the receivers as defendants. In this action the complaint sets out the Jenkins contract, and also the assignment thereof by

Crownhart to the construction company, but fails to refer to the last agreement of September, 1905, by which the rights of Crownhart in the property in question were readjusted and fixed, as we have already seen. The relief sought in this action was that the receivers be required to reassign to plaintiff "the same interest in the real and personal property, intended to be conveyed to the Bay Road Construction Company by plaintiff" by the assignment of the Jenkins contract. The basis of the action was the failure and inability of the company to perform the Jenkins contract and failure to reassign to Crownhart this contract, as it was claimed the agreement by which this contract had been assigned to the company provided should, under the circumstances alleged in the complaint, be done. Later these two actions were consolidated. Action No. 3 was thereafter begun by the receivers, as plaintiffs, making the vendors named in the Jenkins contract, as well as Crownhart, parties defendant, and demanding as the relief to which they claimed to be entitled specific performance by the Jenkins executors and beneficiaries of their contract for the sale of the properties, therein described, and a conveyance thereof to plaintiff after the amount unpaid on said contract had been ascertained.

It appears that the Jenkins executors and beneficiaries do not claim, and have never claimed, any forfeiture of the Jenkins contract, or of any rights thereunder, by reason of any failure on the part of the purchaser or his assignee to comply with its terms. On the contrary, they ask to be paid the balance unpaid upon the contract, which is the interest and counsel fee, to which we have referred, amounting to $183, and that it be determined to whom conveyance shall be made. Upon such payment and the determination of the proper party to receive the conveyance, they stand ready to convey. The receivers on their part, it also appears, are willing and offer to pay the balance of the purchase price, and also consent that the Dunham farm shall be transferred, either directly to Crownhart by the Jenkins executors and beneficiaries, or mediately through themselves as receivers, and further claim that they are entitled to a conveyance to them by the Jenkins representatives of the Sagamore Inn property. Crownhart's claim is set out in the relief demanded in the complaint in action No. 2. The referee has awarded him this relief. Among the facts recited by the referee, upon which he bases this conclusion, are found specific violations by the construction company of the provisions of the Jenkins contract, which the referee has designated as intentional and willful. These violations might, perhaps, if insisted upon by the Jenkins representatives, have furnished them grounds for declaring the contract abrogated. But no such claim is urged in their behalf, as we have already said.

If we are right in our view that Crownhart's interests in the property in question are finally defined by their last enumeration, contained in the last written contract between him and the construction company, which we may refer to as the "lease," then Crownhart's concern as to the property included in the Jenkins contract was limited to the Dunham property; a conveyance of which being all he could claim, in the event the company defaulted in the performance of any or all of the provisions of the lease. It was of no importance to him

whether or not the construction company paid for insurance on the Sagamore Inn property or the taxes assessed thereon. If the company failed to perform this part of the Jenkins contract, the interests of the Jenkins representatives alone were imperiled. There is no stipulation or agreement in the lease Crownhart gave the company which in any way requires it to do anything by way of paying insurance, taxes, or any other similar charge on the property embraced in the Jenkins contract. Crownhart's interest, as defined by the lease, did not even go so far as to require that payment of insurance or taxes should be made on the Dunham property. The specific sum of $5,000 was fixed by this contract as liquidated damages, which he could recover in the event the company failed or was unable to convey the Dunham farm, if that contract was violated. By his first action he elected to demand conveyance of the Dunham property. The receivers have tendered to the Jenkins representatives the balance due on the original contract, and the taxes assessed on the Dunham property have been paid by them. An offer was made by the receivers on the trial that the Dunham property should be conveyed to Crownhart, pursuant to the provisions of the lease; it being conceded that the company has defaulted in performance of that contract. Crownhart's rights, which he has because that lease has not been completely performed, are to be gathered from that contract.

Crownhart insists that the lease is still the contract with the company for that purpose, and the judgment directed by the referee is in large measure based upon violations of that contract. But the fact that the company failed to perform the agreements in the lease did not reinstate Crownhart in the position where he could avail himself of a forfeiture of the original contract, in which he was no longer concerned. If he should seek to assume that position, then he should, equitably at least, be called upon to restore the $1,300 rent which he received, and for which no apparent return was given to the company, either by delivery to the company of the leased premises or in any other way, and so far as possible restore the situation as it was before the lease was executed. We conclude, therefore, that the referee erred in directing a reassignment to Crownhart of the Jenkins contract and a conveyance to him of the property therein described on payment to the Jenkins representatives of the small balance remaining unpaid. We are led the more certainly to this conclusion because we believe that the judgment is evidently unfair, inequitable, and unjust to the interests of the construction company, represented by the receivers. We are also satisfied that every equitable interest of Crownhart in the property in question will be perfectly protected and satisfied by the transfer to him of the Dunham farm. That being our view, it necessarily follows that the judgment should be set aside. Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647; McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527.

If it is necessary to make any specific provision by which the interest in the Dunham property, to be conveyed to Crownhart, may be made to correspond with the title and interest to which he is entitled under the terms of the lease, either by directing payment of taxes or other charges thereon, which have accrued since the lease, those matters, so far as

the evidence discloses, are of small amount, and can be adjusted and provided for in the new trial which we direct. Frain v. Klein, 18 App. Div. 64, 45 N. Y. Supp. 394. The judgment should be reversed, and new trial granted, with costs to appellants to abide the event.

Judgment reversed, and new trial granted, with costs to appellants to abide event. All concur.